The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lorrie L. Dollar. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except for the deletion of Finding of Fact 17 and modification of Finding of Fact 18 (now, 17) and the Conclusions of Law. The Commission also DENIES defendant's motion to dismiss plaintiff's appeal for failure to prosecute in accordance with Rule 701 of the Workers' Compensation Rules.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Worker's Compensation Act, and the employment relationship existed between the parties in May of 1993.
2. The defendant was a duly qualified self-insured with Key Risk Management Services as the servicing agent.
3. The issues for determination are:
 a. Whether the plaintiff suffered from a compensable occupational disease, and if so, the nature and extent of disability; and;
 b. Whether plaintiff's claim is barred for failure to provide the defendant with timely written notice of her condition?
4. The parties stipulated the following documents into evidence:
a. Twenty-page recorded statement;
b. I.C. Form 18, filed December 2, 1993;
c. I.C. Form 19, filed January 12, 1994;
d. I.C. Form 33, filed January 12, 1994; and
e. I.C. Form 33R, filed March 24, 1994.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. The plaintiff began working for defendant-employer in 1991; and in 1993, the plaintiff was working as a nursing assistant II. Plaintiff's duties included bathing, lifting, transporting, feeding and taking the vital signs for patients.
2. In February or March of 1993, the plaintiff began to experience pain in both arms, elbows and forearms while lifting patients; and on May 4, 1993, she went to Dr. Chang Oak, her family doctor, for treatment.
3. Dr. Oak noted plaintiff's complaints of pain in both hips, down the right leg which had been giving away, and joint pain in the hands. A CT scan of the lumbar spine showed mild central protrusion of L5-S1 disc. Dr. Oak referred the plaintiff to Dr. Douglas Jones, a neurosurgeon.
4. On May 17, 1993, Dr. Jones saw the plaintiff for evaluation of the left shoulder and low back. Dr. Jones was of the impression that plaintiff had ulnar neuropathy, for which an MRI and EMG were ordered.
5. After diagnostic studies were completed, Dr. Jones diagnosed plaintiff with a right ulnar neuropathy on May 27, 1993. Dr. Jones prescribed elbow pads for the neuropathy.
6. On June 25, 1993, the plaintiff returned to Dr. Oak with continued complaints of pain. Dr. Oak then referred plaintiff to rheumatologist Dr. Helen Harmon.
7. The plaintiff first saw Dr. Harmon on September 17, 1993, at which time Dr. Harmon noted plaintiff suffered from diffuse myalgias and arthralgias. Blood work was negative for rheumatoid factor. The plaintiff did not follow up with Dr. Harmon.
8. In June or July of 1993, the plaintiff told Ms. Jamie Lilly, Director of Nursing, of her arm complaints. The plaintiff explained that she initially thought she had pulled a muscle and did not believe her condition to be serious enough to warrant reporting.
9. In October of 1993, the plaintiff returned to Dr. Kevin Good, where additional testing showed bilateral epicondylitis. Dr. Good injected plaintiff's elbow with Marcaine, Depo-Medrol, and prescribed Tylenol #3. Plaintiff was ordered out of work for two weeks.
10. Dr. Good referred plaintiff to orthopedist Dr. Denis McGillicuddy, who began treating plaintiff on March 18, 1994. The plaintiff continued to treat with Dr. McGillicuddy until November 22, 1994, during which conservative treatment and steroid injections were followed.
11. Dr. McGillicuddy restricted plaintiff's activities to no repetitive motions with her wrists and a twenty-five pound lifting restriction.
12. On March 5, 1995, the plaintiff returned to Dr. Harmon, who diagnosed fibrositis with diffuse trigger points in the paracervical spine, trapezius muscles, anterior chest, parathoracic and lumbosacral spine bilaterally, medial and lateral epocondyles, and bilateral trochanteric bursa. Dr. Harmon referred plaintiff to her family doctor for management.
13. The plaintiff filed a Form 18 on November 23, 1993.
14. The plaintiff was out of work for two weeks in October of 1993 due to her arms, upon authorization by Dr. Good.
15. The plaintiff's average weekly wage was $242.97, which yields a weekly compensation rate of $161.99.
16. Plaintiff's hip, leg, and back problems are unrelated to her job, but rather were pre-existing conditions.
17. There is insufficient evidence in the record from which to determine by its greater weight that plaintiff's employment with defendant placed her at an increased risk of developing epicondylitis than members of the general public not so employed.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff's complaints of epicondylitis did not result from an injury by accident arising out of and in the course of plaintiff's employment with defendant-employer. N.C. Gen. Stat. § 97-2 (6).
2. Plaintiff has no disease, and no disability related to causes and conditions which are characteristic of and peculiar to plaintiff's employment with defendant-employer. N.C. Gen. Stat. §97-53 (13).
3. Plaintiff is, therefore, entitled to no compensation under the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2 (6); N.C. Gen. Stat. § 97-53 (13).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
ORDER
1. Plaintiff's claim is, and under the law must be, DENIED.
2. Each side shall pay its own costs.
 S/ ________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ ____________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ____________________ DIANNE C. SELLERS COMMISSIONER
LKM/bjp